UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| TAMMY BIGGS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.:  3:07-CV-28 JVB |
| ) | |
| AM GENERAL, LLC and UAW ) | |
| AMALGAMATED LOCAL UNION NO. 5, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This cause is before the Court on Defendants AM General, LLC ("AM General") and UAW Amalgamated Local Union No. 5's ("Union") motions for summary judgment [DE 24, 31]. On January 19, 2007, Plaintiff Tammy Biggs's filed a complaint asserting claims under the Americans with Disabilities Act and the Labor-Management Relations Act.  Ms. Biggs opposes the motions [DE 33, 34], to which the Defendants replied [DE 38, 39].  The substance of Ms. Biggs's claims is not the subject of Defendants' motions.  Instead, the motions are narrowly focused on whether Ms. Biggs is judicially estopped from pursuing her claims against Defendants, due to her failing to disclose the instant lawsuit to the United States Bankruptcy Court prior to its discharge of her debt on July 31, 2007.

**I.  STANDARD OF REVIEW**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  Once the moving party has produced evidence to show that it is entitled to summary judgment, the party seeking to avoid such judgment must affirmatively demonstrate that a genuine issue of material fact remains

for trial. *LINC Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 920 (7th Cir. 1997).

In deciding a motion for summary judgment, a court must "review the record in the light most favorable to the nonmoving party and . . . draw all reasonable inferences in that party's favor." *Vanasco v. National-Louis Univ.*, 137 F.3d 962, 964 (7th Cir. 1998). Nevertheless, the nonmovant may not rest upon mere allegations or denials in its own pleading, but must "set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2). A genuine issue of material fact is not shown by the mere existence of "*some* alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252. It is well-settled that summary judgment should be granted "only where it is perfectly clear that there is no dispute about either the facts of the controversy or the inferences to be drawn from such facts." *Cent. Nat'l Life Ins. Co. v. Fid. & Deposit Co. of Md.*, 626 F.2d 537, 539-40 (7th Cir. 1980) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## II.  FACTUAL BACKGROUND[1]

On February 8, 2005, Ms. Biggs and Joseph A. Biggs filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Indiana as joint debtors. Dep. at 10-11, Exb. A. The petition required disclosure of the Biggses' assets, including "[o]ther contingent and unliquidated claims of every nature . . . ." Dep. at Exb. A, Schedule B, Item No. 20. The

---

[1] The factual basis is uncontested. Hereinafter, unless otherwise noted, all record citations refer to the October 3, 2007 deposition of Plaintiff Tammy Biggs with the relevant portions attached to DE 26 as exhibits A, B, and C in support of AM General's motion, and to DE 32 as exhibit 1 in support of the Union's motion.

Biggses only listed a potential workers compensation claim. *Id*. In May 2005, the bankruptcy court discharged the Biggses' debt and closed the bankruptcy case; however, the bankruptcy court reopened the bankruptcy proceeding on August 4, 2005, without directing the appointment of a trustee, so the Biggses could reaffirm the mortgage on the primary residence. Dep. at 11-12; Biggs's Memo. at DE 33 and 34, Exb. 1. On September 9, 2005, the court vacated the May discharge order subject to reinstatement "for the sole purpose of allowing [the Biggses] to file a Reaffirmation Agreement with their Mortgage Creditor." *Id*. The Biggses did not seek to amend the bankruptcy petition to include any other debts. Biggs's Memo. at DE 33 and 34, Exb. 1. The reaffirmation agreement, notably signed and dated by the Biggses in March 2005, was not received by the mortgage creditor until after the May 2005 discharge, and thus, it was filed on September 14, 2005 in accordance with the bankruptcy court's order. *Id*. On November 10, 2005, the bankruptcy case was again closed, but no discharge order was entered at the time. *Id*.

In light of Ms. Biggs's alleged discriminatory termination from AM General in February 2006, Ms. Biggs filed her charges of discrimination with the EEOC against AM General and the Union on April 19, 2006. Complaint at DE 1, ¶¶ 10, 13, 18; Biggs's Memo. at DE 33 and 34, Exb. 2; Union's Memo. at DE 32, Exb. 2. She then received her right to sue letters dated January 11 and 17, 2007, and filed her complaint in this Court on January 19, 2007. Complaint at DE 1, ¶ 10; Biggs's Memo. at DE 33 and 34, Exb. 3; Union's Memo. at DE 32, Exb. 2. Approximately six months later, in June 2007, Mr. Biggs attempted to obtain a copy of the bankruptcy court's discharge order due to the couple's pending divorce, but he was informed that their debts had not been

3

discharged.[2]  Dep. at 17.  Without a hearing or any further bankruptcy proceedings, on July 31, 2007, the court discharged the Biggses' debt.  Dep. at 12-14, Exb. B.  Before the discharge, the Biggses never amended their bankruptcy schedules to include any assets acquired after the 2005 discharge, including the instant lawsuit.  Dep. at 18-19.

### III.  DISCUSSION

The evidence viewed in the light most favorable to the nonmoving party confirms that Ms. Biggs's claims are hers to pursue before this Court, and the doctrine of judicial estoppel is not appropriately applied to bar those claims under the present circumstances.[3]

When judicial estoppel is premised on a failure to schedule a lawsuit in a prior bankruptcy proceeding, a court should first determine whether the individual has standing to bring suit or whether the trustee is the real party in interest, because most of a debtor's possessions become property of the estate upon the filing of a bankruptcy petition. *See* 11 U.S.C. § 541; *Biesek v. Soo Line R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006) (concluding that there was no need to consider whether judicial estoppel applied because plaintiff's pre-bankruptcy claim belonged to the trustee for the creditors' benefit, where it was not abandoned).  Neither party adequately addresses the

---

[2] According to Ms. Biggs's sworn testimony:  "The lady at the courthouse spoke with [Mr. Biggs] and told him that she would get back with us by mail, she would have [the case] put in front of a judge and have it discharged.  The only thing that [the Biggses]—the only kind of thing that [the Biggses] got in the . . .mail, . . .was [the discharge order].  So it was taken care of."  Dep. at 17.  The Biggses were not given a reason for why the case was not previously discharged.  *Id*.

[3] The question of whether Ms. Biggs had a statutory obligation to amend her 2005 Chapter 7 bankruptcy petition, as opposed to any duty imposed on a Chapter 13 debtor, in order to include the present lawsuit accruing in 2006 does not need to be considered.
  Both Chapter 7 and Chapter 13 require full disclosure of assets, and any distinction between the types of bankruptcies available is not sufficient enough to affect the applicability of judicial estoppel here. *See, Becker v. Verizon North, Inc.*, 2007 WL 1224039, *1 (7th Cir. April 25, 2007).  *But see*, *Biesek v. Soo Line R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006) (distinguishing a debtor's attempt to pursue an action for his own benefit, from a trustee's pursuit of an action for the benefit of the creditors).

standing held by Ms. Biggs, a Chapter 7 debtor with a post-petition claim, however the Court does so *sua sponte*.

The commencement of the Biggses' bankruptcy case on February 8, 2005 created a bankruptcy estate. 11 U.S.C. § 541(a). Although the nature of a debtor's interest in property is determined by state law, the question of whether the resulting interest should count as property of the estate for Section 541 purposes is an issue of federal law. *Fisher v. Apostolou*, 155 F.3d 876, 880 (7th Cir. 1998). Thus, the bankruptcy estate included "all legal or equitable interests of the debtor in property as of the commencement of the case" and "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(1) and (7). Once a bankruptcy proceeding has begun, the trustee has the sole responsibility to represent the estate, managing the "property of the estate" as defined by Section 541 and bringing actions on its behalf to marshal assets for the benefit of the estate's creditors. 11 U.S.C. § 323; *Fisher*, 155 F.3d at 879-80.

For the reasons that follow, Ms. Biggs's claims are not the property of the estate. First, unlike in *Biesek* where the claims accrued prior to the debtor's filing the bankruptcy petition, Ms. Biggs's discrimination claims accrued almost one year after the Biggses filed for bankruptcy. *See also*, *Jaeger v. Clear Wing Productions, Inc.*, 465 F.Supp.2d 879, 883-84 (S.D.Ill. 2006). Second, the bankruptcy estate was closed and the Biggses' debt discharged in May 2005, again, before Ms. Biggs's claims ever accrued. Third, the bankruptcy case was reopened without the appointment of a trustee, and the discharge order was vacated "for the sole purpose" of allowing the Biggses to reaffirm their mortgage. It logically follows that a trustee need not be appointed, where no additional debts were being included, no amendment to the schedules taking place, and no trustee was needed to facilitate the Biggses' mortgage reaffirmation—the only event the bankruptcy court

5

authorized upon reopening the case. Even more telling, once the reaffirmation agreement was filed, the bankruptcy case was closed <u>before</u> Ms. Biggs's cause of action against the Defendants accrued the following year.  It remains unclear why the discharge order failed to immediately follow, but the docket sheet reflects that no activity occurred in the case until Mr. Biggs inadvertently brought the undischarged debt to the court's attention by requesting a copy of the discharge order.  Clearly the oversight was corrected, when a discharge order was entered less than a month after Mr. Biggs's request (without additional formal court proceedings), yet over 20 months after the case had been closed.  As implicitly acknowledged by the parties, and even if not, as determined by this Court, Ms. Biggs, as the real party in interest with respect to her claims against the Defendants, has standing.

All of this is to say that the Court can consider the judicial estoppel issue without fear of harming Biggs's prior creditors. *See Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) ("[j]udicial estoppel is an equitable doctrine, and it is not equitable to employ it to injure creditors who are themselves victims of the debtor's deceit."). In certain circumstances, an employment discrimination plaintiff who failed to list the claim in a bankruptcy petition will be judicially estopped from prevailing on the discrimination claim. This, however, is not the situation at bar.

The Supreme Court first recognized the doctrine of judicial estoppel in *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001).  The Court explained that the doctrine's "purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id*.; *Eastman v. Union Pacific R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007). The rule is intended to prevent improper use of judicial machinery. *Id*. Judicial estoppel may apply when: (1) a party's subsequent position is 'clearly inconsistent' with its former position; (2) the facts at issue are the same in both cases; (3) the party to be estopped

6

convinced the first court to adopt its position; and (4) the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.  *Maine*, 532 U.S. at 750; *U.S. v. Christian*, 342 F.3d 744, 747 (7th Cir. 2003) (reasoning that "[judicial estoppel] is an equitable concept providing that a party who prevails on one ground in a lawsuit may not in another lawsuit repudiate that ground.").  For instance, a debtor in bankruptcy who receives a discharge (and thus a personal financial benefit) by representing that he has no valuable choses in action cannot turn around after the bankruptcy ends and recover on a supposedly nonexistent claim.  *Biesek*, 440 F.3d at 412.

Since estoppel is an equitable concept, its application is within the court's sound discretion, and it should not be used where it would work an injustice, such as where the former position was the product of inadvertence or mistake.  *In re Cassidy*, 892 F.2d 637, 641-42 (7th Cir. 1990) (judicial estoppel is to be applied to prevent litigants from "playing fast and loose" with the courts). Inadvertence or mistake exists where (1) the plaintiff lacked knowledge of the undisclosed claim or (2) had no motive to conceal the claim. *Eastman*, 493 F.3d at 1157 (affirming the district court's decision to judicially estop the plaintiff from bringing an undisclosed pre-petition claim in spite of the reopening of the bankruptcy estate); *but see*, *Cannon-Stokes v. Potter*, 453 F.3d 446, 449 (7th Cir. 2006) ("a debtor in bankruptcy is bound by her representations, no matter why they are made . . ."); *Becker v. Verizon North, Inc.*, 2007 WL 1224039, *1 (7th Cir. April 25, 2007) (whether the debtor's failure to disclose the lawsuit in the sworn financial statement was unintentional or a mistake makes no difference).

Defendants AM General and the Union seek to disallow Ms. Biggs's claims under the doctrine of judicial estoppel.  Defendants cite several cases that outline the general purpose behind

7

the doctrine, namely, *Cannon-Stokes v. Potter*, 453 F.3d 446 (7th Cir. 2006) and *Burnes v. Pemco Aeroplex, Inc*., 291 F.3d 1282 (11th Cir. 2002), and argue that judicial estoppel prevents Ms. Biggs from receiving the benefit of her bankruptcy discharge without disclosing the pending lawsuit. Defendants also allege that Ms. Biggs had the motive to conceal the litigation and acted with the intent to manipulate the judicial system in doing so.

The Court finds Defendants' contentions unpersuasive. First, Defendants rely on distinguishable case law stemming from different facts, such as the debtor's pre-petition cause of action which existed in *Cannon-Stokes*, or the debtor's obligation in *Burnes* to list all suits to which he was a party within one year of filing bankruptcy, or to list the pending lawsuit upon converting his Chapter 13 bankruptcy petition to a Chapter 7 case. Second, as previously discussed, the events underlying Ms. Biggs's complaint against Defendants accrued almost one year after the Biggses filed their bankruptcy petition. Further, the Biggses' debt was discharged and the bankruptcy case closed before Ms. Biggs was ever terminated from AM General. It goes without saying that Ms. Biggs could not have predicted her termination prior to the initial bankruptcy discharge or its subsequent closure. The reopening of the case was limited to the Biggses' reaffirmation of their mortgage, and did not entitle them to amend their bankruptcy schedules. The bankruptcy case was closed again in 2005, before Ms. Biggs's termination in 2006. Because the doctrine of judicial estoppel only applies where a party maintains inconsistent positions, Ms. Biggs cannot be punished for omitting the discrimination claims that did not exist while her bankruptcy case was pending. The delayed discharge order is of no consequence, because given the procedural posture of the bankruptcy suit and the present lawsuit, it cannot be said that Ms. Biggs attempted to circumvent the judicial system by hiding an asset from creditors, as Ms. Biggs was unaware of any legal injury

well after the bankruptcy case was over. In essence, allowing Defendants to take advantage of the bankruptcy court's delay in entering the discharge order, and thus barring Ms. Biggs's claims, would fail to afford Ms. Biggs the reasonable inferences to which she is entitled on summary judgment, and grant an unjust windfall to Defendants. *See Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 365 (3rd Cir. 1996) ("[judicial estoppel] is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims, especially when the alleged inconsistency is insignificant at best and there is no evidence of intent to manipulate or mislead the courts. Judicial estoppel is not a sword to be wielded by adversaries unless such tactics are necessary to secure substantial equity."). Finally, refusing to estop Ms. Biggs from pursuing her discrimination claims does not award her some unfair advantage or impose an unfair detriment upon Defendants, but it leads to a just result, given due consideration of all the circumstances of this particular case.

Defendants are not entitled to judgment as a matter of law.

## IV. CONCLUSION

Based on the foregoing, the Court DENIES the motions for summary judgment filed by Defendants AM General, LLC [DE 24] and UAW Amalgamated Local Union No. 5 [DE 31].

SO ORDERED on May 1, 2008.

s/ Joseph S. Van Bokkelen  
JOSEPH S. VAN BOKKELEN  
UNITED STATES DISTRICT JUDGE  
HAMMOND DIVISION